UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

WILLIAM WEIKEL                                                                    PLAINTIFF

V.                                                    CIVIL ACTION NO. 3:18-CV-408-DPJ-FKB

JACKSON PUBLIC SCHOOL DISTRICT                                        DEFENDANT

ORDER

Plaintiff William Weikel filed this race-discrimination action after he was fired from his

job as an elementary-school teacher.  Defendant Jackson Public School District (JPS) previously

moved for summary judgment, but the Court denied the motion because the discovery deadline

was extended.  Discovery is now closed, and JPS has renewed its motion.  For the following

reasons, JPS's summary-judgment motion [56] is granted as to the conceded claim but is

otherwise denied.

I.        Background

Weikel is a Caucasian teacher who began working for JPS in 2014.  In 2016, he

transferred to Green Elementary School, where he taught fourth grade.  In September 2016, the

school received a letter from a parent of one of Weikel's students, who will be identified as

"DM," alleging that Weikel "picked [DM] up by the back of his jacket collar to the point of

where . . . only the tip of his toes were touching the floor," and "upon releasing the back of his

jacket, Mr. Weikel shoved him up to [a] table."  JPS Hearing Tr. [56-3] at 23.[1]

---

[1] According to Weikel, the complaining mother's letter also stated that Weikel lacked the
"compassion, patience or competence to manage a classroom of African-American students" and
that "[i]f Mr. Weikel were a police officer, and pulled [DM] over, based on the judgement he
used on Wednesday, he would have shot him."  Pl.'s Mem. [67] at 2.  Weikel failed, however, to
cite any record evidence supporting those assertions.

The school's principal, Yavonka McGee, investigated the accusation. JPS Hearing Tr. [56-3] at 24–25. After interviewing the students in the class, McGee completed an investigative report and gave it to her supervisor, William Merritt. *Id.* Based on Merritt's review of the report, the students' statements, and Weikel's written statement, he recommended that Weikel's employment be terminated. *Id.* at 80–81. According to Merritt, Weikel's actions were "in direct violation of [JPS's] corporal[-]punishment policy, as well as [its] staff ethics policy." *Id.* at 80. The corporal-punishment policy prohibited "[a]ny form of unwelcome or inappropriate physical contact with a student, except for the purposes of appropriate instruction, self-defense, and necessary and appropriate physical restraint." *Id.* at 42. The ethics policy provided, "Respect yourself and others. Disagree without being disagreeable. Do not engage in verbal or physical violence, especially with our scholars." *Id.* at 41.

Weikel requested a hearing on the charges, which was held on November 17, 2016. At the hearing, Weikel did not deny touching the student, but he disputed the extent of the contact. According to Weikel, DM and another student "had stood up and [were] ready to get aggressive . . . such that this was only going to last another second or two before they were rolling on the floor" fighting. *Id.* at 151. To prevent the fight, Weikel says he placed his "hand upon [DM's] back," *id.* at 161, "h[e]ld on to DM's jacket," *id.* at 173, and "walked [him] to the back of the classroom," *id.* But Weikel maintains that he never lifted or pushed DM. *Id.* at 162; *see also* Weikel Statement [56-5]. Indeed, Weikel claims that he is disabled and could not have lifted the child. JPS Hearing Tr. [56-3] at 143; Weikel Statement [56-5]. Weikel denied that he did anything wrong. JPS Hearing Tr. [56-3] at 181.

JPS's Board of Trustees took up Merritt's termination recommendation at a January 18, 2017 Special Meeting and voted unanimously to adopt it. *See* Meeting Minutes [56-6] at 5.

After receiving a right-to-sue letter from the Equal Employment Opportunity Commission, Weikel timely filed this action.

Weikel alleges that JPS violated Title VII of the Civil Rights Act as well as 42 U.S.C. §§ 1981 and 1983.  Am. Compl. [29] ¶¶ 49–67.  Specifically, Weikel, a Caucasian male, says JPS "disciplin[es] white teachers more severely than black teachers for corporal punishment." *Id.* ¶ 47.  Weikel also initially pursued a class-action claim against JPS for discriminatory "patterns or practices," but he has since abandoned that claim.  Pl.'s Resp. [67] at 6.  The statutory claims are all that remain.

II.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383,

387 (5th Cir. 2007) ("In considering a summary judgment motion, all facts and evidence must be taken in the light most favorable to the non-movant" (citing *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006)).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.    Analysis

A.    Title VII and § 1981 Claims

Title VII makes it unlawful for an employer "to discharge any individual . . . because of such individual's race[.]" 42 U.S.C. § 2000e-2(a)(1).  Additionally, 42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property[.]"  Claims under these statutes are analyzed under the same framework. *Wallace v. Seton Family of Hosps.*, 777 F. App'x 83, 87 (5th Cir. 2019).

A plaintiff can establish intentional discrimination under Title VII and § 1981 "through either direct or circumstantial evidence." *Id.*  "If a plaintiff only offers circumstantial evidence then the modified *McDonnell Douglas* burden-shifting framework applies." *Id.*  Weikel cites no direct evidence of discrimination, so the parties have proceeded under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

4

1.      *Prima Facie* Case

Under the *McDonnell-Douglas* framework, "a plaintiff must first set forth a prima facie case of discrimination." *Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016) (citing *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015)).  Here, JPS elected to forgo argument on Weikel's *prima facie* case in its opening brief and focused instead on the remaining stages of the burden-shifting analysis.  *See* Def.'s Mem. [57] at 8.  Having made that concession, the Court finds that Weikel met his burden; the Court would have reached that same conclusion even if disputed.

2.      The Employer's Proffered Reason for the Action

If the plaintiff establishes a prima facie case, "a presumption of discrimination arises and the burden of production shifts to the employer to 'articulate a legitimate non-discriminatory reason for the adverse employment action.'" *Morris*, 827 F.3d at 400 (quoting *Burton*, 798 F.3d at 227).  "[C]ourts are not to assess the employer's credibility or the truthfulness of its reason at this stage of the inquiry." *Patrick v. Ridge*, 394 F.3d 311, 318 (5th Cir. 2004) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).  All the law requires at this step is for the employer to "articulate a nondiscriminatory reason *with* '*sufficient clarity*' to afford the employee a realistic opportunity to show that the reason is pretextual." *Id.* at 317 (emphasis in *Patrick*) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255–56 (1981)).  Here, JPS says Weikel violated its policies, which constitutes a legitimate, nondiscriminatory reason for terminating employment.  *See Eaglin v. Tex. Children's Hosp.*, No. 19-20222, 2020 WL 582727, at *5 (5th Cir. Feb. 4, 2020).

      3.      Pretext

Finally, "[i]f the employer carries [its] burden, the 'inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.'" *Morris*, 827 F.3d at 400 (quoting *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004)).

JPS correctly notes that the job of "a reviewing court conducting a pretext analysis is not to engage in second-guessing of an employer's business decisions. . . .  Therefore, [the plaintiff] must do more than simply argue that [the employer] made an incorrect decision." *LeMaire*, 480 F.3d at 391.  And JPS is probably correct that Weikel's arguments regarding the employment decision do little more than disagree with it.

But JPS misses a bigger point when it argues that Weikel may not rely on disparate treatment to meet his burden at the pretext stage.  According to JPS, "Plaintiff is apparently under the misapprehension" that proof of disparate treatment "is sufficient to discharge his evidentiary burden to show pretext."  Def.'s Reply [68] at 5.  It is.  "A plaintiff may establish pretext *either* through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (emphasis added) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)).  For example, in *Caldwell v. KHOU-TV*, the Fifth Circuit reversed summary judgment and remanded the case where, among other reasons, "the district court erred in determining that [] evidence of disparate treatment was insufficient to raise a material question of fact as to pretext."  850 F.3d 237, 244 (5th Cir. 2017); *accord Lawson v. AT&T Mobility Servs., L.L.C.*, No. 19-30714, 2020 WL 1696308, at *1 (5th Cir. Apr. 7, 2020); *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 589 n.82 (5th Cir. 2020).  Weikel may show pretext through proof of

disparate treatment, and that is the approach he pursued in his summary-judgment response. *See* Pl.'s Resp. [67] at 7–8.

Turning to that response, Weikel points to two African-American teachers who allegedly violated the corporal-punishment and staff-ethics policies but were not fired. *Id.* JPS argues that these teachers were not similarly situated and their conduct was factually distinguishable. Def.'s Reply [67] at 6–7.[2]

In a disparate-treatment analysis, "a plaintiff must demonstrate that a 'similarly situated' employee under 'nearly identical' circumstances, was treated differently." *White v. City of Richland*, No. 3:15-CV-153-DPJ-FKB, 2016 WL 1600067, at *3 (S.D. Miss. Apr. 19, 2016) (quoting *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005)). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). Crucially, "nearly identical" is not synonymous with "identical." *Id.* "For example, it is sufficient that the ultimate decisionmaker as to employees' continued employment is the same individual, even if the employees do not share an immediate supervisor." *Id.* at 260–61.

Additionally, "the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar

---

[2] JPS apparently thinks Weikel offered this evidence in his summary-judgment response to establish a *prima facie* case. JPS therefore addresses disparate treatment as applying to the first step of the burden-shifting analysis. But as noted, the Fifth Circuit allows this evidence at the pretext stage. *See Laxton*, 333 F.3d at 578. And it appears that Weikel offered it for that purpose—there was no need to address the *prima facie* case after JPS failed to dispute it. The Court will consider the disparate-treatment evidence as it relates to pretext.

employment decisions." *Id.* at 260 (quoting *Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004)). "As the Supreme Court has instructed, the similitude of employee violations may turn on the 'comparable seriousness' of the offenses for which discipline was meted out[.]" *Id.* at 261 (quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11 (1976)).

Here, the Board affirmed the recommendation to fire Weikel on January 18, 2017. *See* Meeting Minutes [57-6]. The alleged conduct was that Weikel "closed his fist around the student's clothing at the back of the student's neck and maintained that hold while 'redirecting' the student to the back of the classroom." Def.'s Mem. [57] at 9 (citing Tr. [56-3] at 181). The student's mother also complained that Weikel lifted her son "to the extent that the tip of his toes touched the floor," JPS Discovery Resp. [67-2] at 2, and "shoved him up to the table," JPS Hearing Tr. [56-3] at 23. There is no allegation that the child was injured.

Weikel says that same Board of Trustees rejected termination recommendations for two similarly situated African-American teachers identified as Teachers "A" and "B." First, Weikel says Teacher A, "was terminated but then allowed to keep her job despite hitting a restrained child." JPS Discovery Resp. [67-2] at 3. In another incident, Weikel says that—less than one month before he was fired—the Board of Trustees rejected a termination recommendation and allowed Teacher B to keep his job despite "twist[ing] a student's arm and forc[ing] hi[m] into a wall." Pl.'s Resp. [67] at 5 (citing JPS Discovery Resp. [67-2] at 2).

As an initial point, these individuals were similarly situated. All three were JPS teachers, and Weikel, who had never been disciplined, did not have a more serious disciplinary history. JPS nevertheless attempts to distinguish the two comparators noting that neither "worked at the same school as [] Plaintiff, none had the same supervisor (principal) as Plaintiff, nor did either

have the termination recommendation issued by the same individual as Plaintiff."  Def.'s Reply
[68] at 6.  True, but the JPS Board of Trustees was the ultimate decisionmaker in all three
circumstances.  Meeting Minutes [56-6] at 5; JPS Discovery Resp. [67-2] at 2.  Thus, all three
"had their employment status determined by the same person," or, in this case, group of people—
the Board of Trustees.  *Lee*, 574 F.3d at 260.  So, the differences in supervisors, schools, and
termination recommenders is immaterial.  *Id.*

Turning to the similarity of the conduct, JPS says Weikel's arguments are based on the
allegations against Teachers A and B, yet the Board rejected those accusations finding that
neither teacher violated the corporal-punishment policy as asserted.  Starting with Teacher A,
JPS says her conduct "fell under recognized exceptions as she was acting in self defense and
defense of another teacher."  Def.'s Reply [68] at 7 (citing Board of Trustees' Order [67-1]).  As
for Teacher B, JPS says he never twisted a student's arm or pushed him into a wall and instead
merely grabbed the student's backpack "in a tug of war . . . while attempting to confiscate a cell
phone."  *Id.*  Accordingly, the Board rejected the recommendation that Teacher B violated the
corporal-punishment policy.  *Id.* (citing Board of Trustees' Order [67-1]).[3]

Those arguments ignore a few glaring questions of fact, including what actually
happened in those other incidents.  JPS relies on the comparators' accounts and the Board's
ultimate conclusions, whereas there is other evidence underlying the termination
recommendations the Board rejected.  For example, there are questions whether Teacher B
touched more than the backpack and merely tussled with the student.  The student said he twisted
her arm, Investigative Report [67-1] at 4, and fourteen of the eighteen students that witnessed the

---

[3] The Board of Trustees' Order as well as the underlying investigative materials were produced
for the Court to examine *in camera*.

backpack incident told the investigating principal that the teacher pushed the student at the conclusion of the quarrel, *id.* at 5–6.  Similar fact questions exist as to whether Teacher A, acted in self-defense when she allegedly "hit[] a restrained child."  JPS Discovery Resp. [67-2] at 3. So, there are questions about what actually happened.

And as previously noted, "the similitude of employee violations may turn on the 'comparable seriousness' of the offenses."  *Lee*, 574 F.3d at 261.  Here, a jury could conclude that the other acts were more violent.  *See* Board of Trustees' Order [67-1] at 1 ("[Teacher B] engaged in a physical pulling and tugging of the student's backpack with the student, which led to the student injuring the student's hand"); Pre-Hearing Letter [47-2] at 1 ("[Teacher A] slapped [student]").  Although both Teacher A and Teacher B were recommended for termination, in each instance the Board accepted the teacher's version of events and overturned those recommendations.  JPS Discovery Resp. [67-2] at 2–3.  Meanwhile, the Board rejected Weikel's account and terminated his employment.[4]

"[T]he question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext."  *Caldwell*, 850 F.3d at 242.  That question must be considered when viewing the facts and evidence in the light most favorable to the non-

---

[4] JPS observes that four other teachers were terminated for violating the corporal-punishment policy, three of whom are African American.  Def.'s Reply [68] at 6; *see* JPS Discovery Resp. [67-2] at 2.  But those terminated African-American teachers do not negate Weikel's comparator evidence because their offenses seem worse—or are at least distinguishable.  The first became angry in class and started throwing books, pushing over desks, and kicking garbage cans.  JPS Discovery Resp. [67-2] at 2.  The second hit a student with a ruler, leaving a long red mark on his or her chest.  *Id.*  The third was terminated for "picking up a child and slamming him to the concrete ground."  *Id.*

movant—Weikel. *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). Weikel has created a fact question regarding pretext; summary judgment is denied.[5]

B.      § 1983 Claim

Weikel says JPS violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, which is actionable under § 1983. "An employment discrimination claim brought under Section 1983 for violation of the Fourteenth Amendment is analyzed under the same evidentiary framework as Title VII actions." *Jackson v. Lowndes Cty. Sch. Dist.*, No. 1:08-CV-178-SA-JAD, 2010 WL 91245, at *7 (N.D. Miss. Jan. 6, 2010) (citing *Lawrence v. Univ. of Texas Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999)). Indeed, "[s]ection 1983 and title VII are 'parallel causes of action.'" *Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007) (quoting *Cervantez v. Bexar Cty. Civil Serv. Comm'n*, 99 F.3d 730, 734 (5th Cir. 1996)). Because there are fact questions as to Weikel's § 1981 and Title VII claims, "it is not necessary for the Court to undertake a separate equal protection analysis." *Jackson*, 2010 WL 91245, at *7. JPS's motion is denied as to Weikel's § 1983 claim

IV.    Conclusion

The Court has considered all arguments. Those not addressed would not change the outcome. For the stated reasons, JPS's Motion for Summary Judgment [56] is granted as to Weikel's "pattern or practice" claim on behalf of a class of teachers but otherwise denied. Due

---

[5] "Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *see also Oliver v. Holmes Cty.*, No. 3:12-CV-683-DPJ-FKB, 2013 WL 4039392, at *6 n.5 (S.D. Miss. Aug. 7, 2013) (denying in part defendant's motion for summary judgment). Summary judgment is not appropriate on this record.

to the backlog of criminal matters created by the Coronavirus pandemic, the pretrial and trial dates are hereby continued until further notice.  In addition, the parties are instructed to contact the magistrate judge to reset the previously cancelled settlement conference.  After that conference concludes, the parties may contact the Courtroom Deputy to obtain new dates for pretrial and trial.

   **SO ORDERED AND ADJUDGED** this the 27th day of April, 2020.

         s/ *Daniel P. Jordan III*
         CHIEF UNITED STATES DISTRICT JUDGE